**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEREMIAH MOORE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-5172** |
| | : | |
| **MONTGOMERY COUNTY** | : | |
| **CORRECTIONAL FACILITY, et al.,** | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**SÁNCHEZ, J.**                                                **NOVEMBER  8, 2021**

This matter comes before the Court by way of an Amended Complaint (ECF No. 9), brought by Plaintiff Jeremiah Moore, proceeding *pro se*.  By Order dated June 30, 2021, the Court previously determined that Moore was not able to afford to pay the filing fee in this action and granted him leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, and provided that the Amended Complaint was still subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B).  The Court has now conducted the required screening, and for the following reasons, the Amended Complaint will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) as frivolous and for failure to state a claim.  Moore will be granted to leave to file a second amended complaint on one narrow claim as set forth below.

**I.      FACTUAL ALLEGATIONS[1]**

Moore, a former prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983 with respect to the events that occurred while he was incarcerated at the Montgomery County Correctional Facility in 2020.  Moore named the following Defendants in this action: (1) the

---

[1]  The facts set forth in this Memorandum are taken from Moore's Complaint.

Montgomery County Correctional Facility ("MCCF");[2] (2) Dr. G. Andrew Szekely, the President

of the Board of Inspectors at MCCF; (3) Nancy L. Wieman, the Vice President of the Board of

Inspectors at MCCF;[3] Board of Inspectors members (4) Eileen Behr, (5) William J. Catania, and

(6) Stanley M. Turtle; (7) MCCF Warden Julio M. Algarin; (8) MCCF Deputy Warden Sean P.

McGee; (9) MCCF Assistant Warden Mark S. Murray; MCCF Corrections Officers (10) C.

Minerva, (11) Sergeant Baker, (12) Captain Berger, (13) Lieutenant Patton, and (14) Carfagno.

(ECF No. 9 at ¶¶ 4-16.)[4]  Although not named in the caption of the Amended Complaint or in the

list of Defendants, it appears that Moore also seeks to name as a Defendant another employee at

MCCF, an individual identified only as "Defendant Davis."  (*Id.* at ¶¶ 24, 25.)

Moore alleges that Defendant Minerva entered Moore's cell on approximately June 17,

2020, "to conduct a cell inspection" and proceeded to remove two books, a chessboard, and a

towel from the top of the trash can in the cell.  (*Id.* at 4, ¶¶ 19-20.)  Moore alleges that after

Minerva removed these items, he then searched the trash can itself, "held [up] a clear plastic bag

with fruit and water inside it" and asked Moore if the plastic bag belonged to either Moore or his

cellmate.  (*Id.* at ¶¶ 21-22.)  Moore responded by saying "No, Its Trash", to which Minerva

replied, "Someone's in big trouble[,]" before he left the cell with the bag of water and fruit.  (*Id.*)

According to Moore, several hours later Minerva "escorted him to a[n] office room in the

---

[2]  Moore only named MCCF as a Defendant in the caption of his Amended Complaint.

[3] Although Moore's Amended Complaint asserts that Szekely and Wieman are the President and
Vice President of the Montgomery County Correctional Facility, Exhibit A attached to the
Amended Complaint makes clear that they are the President and Vice President of the Board of
Inspectors of the MCCF.

[4]  Where the Court cites a page number rather than a paragraph number, the Court will adopt the
pagination supplied by the CM/ECF docketing system.

maximum security section of the facility" where Moore met with Defendant Davis, who served

Moore with a misconduct report.[5]  Moore alleges that Davis then ordered that Moore "be seized"

by Minerva, taken to medical, and then taken to the Restricted Housing Unit ("RHU").  (*Id.* ¶

25.)  Moore contends that after he was taken to medical, he was moved to a cell on J Block and

that Defendant Carfagno came to Moore's new cell approximately 20 minutes later to bring

Moore some of his property, along with a copy of a property report that listed items Moore was

not permitted to have while in the RHU.[6]  (*Id.* ¶ 27.)  Upon receipt of his property, Moore alleges

that he learned that the follow items were missing: "a bible, 2 earbuds, 1 county issue pants, 5

headphones, 1 coca butter stick, 2 playing cards, 1 brush, 1 black slides, 2 soap dishes, 1 coffee

mug, [and] 1 doo rag."[7]  (*Id.* ¶ 28.)

---

[5]  Moore attached a copy of this misconduct report to his Amended Complaint as Exhibit B.  (*See* ECF No. 9 at 14.)  In screening Moore's Amended Complaint pursuant to § 1915(e)(2)(B), the Court may properly consider this misconduct report. *See Harris v. U.S. Marshal Serv.*, Civ. A. No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), report and recommendation adopted as modified, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)).

The misconduct report Minerva prepared provides that he entered Moore's cell "to conduct a cell and window inspection" and that while he was in the cell, he "noticed a trash can by the desk area which had a towel covering it."  (*Id.*)  "After removing the towel," Minerva noted that he "found several articles of county issued clothing in the trash can[,]" and that "[u]pon further inspection in the trash can [he] . . . uncover[ed] a trash bag filled with liquid and a large quantity of cut up fruit."  (*Id.*)  Minerva explained in the misconduct report that this "item of contraband is commonly referred [to] by the inmate population as 'hooch', a fermented beverage that mimics the effects of alcohol when consumed" which can "put the safety and security of th[e] facility in jeopardy if" consumed by inmates.  (*Id.*)

[6] Moore specifically notes that his "[p]roperty was packed in [his] absence."  (*Id.* ¶ 26.)

[7] Moore asserts that he submitted two "request forms" to Defendant Davis:  one "requesting the recovery of [his] missing property" and the other "requesting a hearing for the deprivation of [his] rights and privileges accorded [in the] Inmate Guidelines."  (*Id.* ¶ 29.)

According to his Amended Complaint, Moore had a hearing on or about June 24, 2020 with Defendant Patton and two other individuals that Moore does not identify by name. (*Id.* ¶ 30.) Moore asserts that at this hearing he "was found guilty" on the misconduct charge "without any substantial evidence" being presented and "was sentenced to 20 days in the RHU" despite the facts that Minerva was not present for the hearing and no procedure or test was offered to confirm that the liquid in the plastic bag in the trash can was a fermented substance.[8] (*Id.*) Moore asserts that he was released from the RHU on or about July 7, 2020 and rehoused on D Block. (*Id.* ¶ 32.)

Moore alleges that he filed a grievance on approximately July 13, 2020, regarding the events of June 17, 2020 and the events that followed. (*Id.* ¶ 33.) Moore attached a single page of his grievance form as Exhibit D to his Amended Complaint. (ECF No. 9 at 16.) In his grievance form, Moore asserted that "Minerva conducted a cell search disguised as a cell inspection which lead to [his] seizure. Hours after the incident . . . [he] was rehoused . . . [to] the hole[,] which violated [the] Inmate Guidelines . . . [and his] constitutional rights." (*Id.*) Moore also claimed in his grievance that he "was detained 7 days after [he] was informed of the . . . (misconduct)" and that he "was punished before [he] had a disciplinary hearing" which took place on the "8th day of [his] detention." (*Id.*) Moore asserts that he received a response to his grievance from Defendant Berger the following day who "promised to reimburse Moore [for] items documented on his commissary list and property report." (ECF No. 9 ¶ 34.) Defendant Berger later called Moore to the "day room area" and provided Moore with items including "2 cocoa butter lotions, 1 Suave deodorant, 1 Next soap, and 1 hair brush." (*Id.* ¶ 35.) Moore claims, however, that the

---

[8] Moore alleges that he filed an appeal of the result of this hearing to Defendant Murray on June 24, 2020. (*Id.* ¶ 31.)

items he received were not the items from his property report, and Defendant Berger directed

him to file a "paper request" but that he did not receive a response.  (*Id.* ¶¶ 36-37.)

Based on these allegations, Moore seeks compensatory damages in the amount of $1.5

million, punitive damages in the amount of $2.5 million, the intuition of field tests or lab tests to

determine fermentation, and a declaration that the Defendants violated his constitutional rights

and his rights under the Declaration of Human Rights.  (*Id.* ¶¶ 49-52.)

## II.    STANDARD OF REVIEW

The Court previously granted Moore leave to proceed *in forma pauperis* because it

appeared that he was incapable of paying the fees to commence this civil action.  Accordingly,

28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to

state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by

the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure

12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted).  Moreover, 28 U.S.C. § 1915(e)(2)(B)(i) requires the Court to dismiss the

Amended Complaint if it is frivolous.  A complaint is frivolous if it "lacks an arguable basis

either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if

it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080,

1085 (3d Cir. 1995).  "At this early stage of the litigation,' '[the Court will] accept the facts

alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to

state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).   Conclusory allegations do not

suffice.   *Iqbal*, 556 U.S. at 678.   As Moore is proceeding *pro se*, the Court construes his

allegations liberally.   *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay

Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.   DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is

Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

42 U.S.C. § 1983.   "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."   *West v. Atkins*, 487 U.S.

42, 48 (1988).   "A defendant in a civil rights action must have personal involvement in the

alleged wrongs" to be liable.   *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988);

*Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular

'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845

F.2d at 1207)).   Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution."   *Iqbal*, 556 U.S. at 676.

### A.     Claims Against MCCF

In the caption of his Amended Complaint, Moore names the Montgomery County

Corrections Facility as a Defendant in this case.[9]  Any § 1983 claims against MCCF must

dismissed as frivolous because a correctional facility is not a "person" under Section 1983.

*Cephas v. George W. Hill Corr. Facility*, Civ. A. No. 09-6014, 2010 WL 2854149, at *1 (E.D.

Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, Civ. A. No. 13-7680, 2014 WL

4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F.

Supp. 271 (E.D. Pa. 1976); *see also Wiggins v. Montgomery Cty. Corr. Facility*, Civ. A. No. 87-

6992, 1987 WL 14721, at *1 (E.D. Pa. Nov. 16, 1987) ("[T]he Montgomery County Correctional

Facility is not a person under § 1983.  For this reason alone, the complaint must be dismissed.").

### B.     Claims Regarding Violations of the Inmate Handbook

Moore alleges that when he entered MCCF on September 13, 2019, he "received a[n]

inmate handbook known as [the] Inmate Guidelines."  (ECF No. 9 ¶ 17.)  A copy of MCCF's

Inmate Guidelines is attached to Moore's Amended Complaint as Exhibit A.  Throughout the

Amended Complaint, Moore repeatedly asserts that various actions by Defendants amounted to

violations of the Guidelines.  (*See, e.g.*, id. ¶ 25) ("This being the first violation of the Inmate

Guidelines committed against me."); (*id.* ¶ 26) ("This being the 2nd violation of the Inmate

Guidelines committed against me."); (*id.* ¶ 38) ("This being the eig[h]th violation of Inmate

Guidelines Handbook committed against Plaintiff Moore."); (*id.* ¶ 46) ("Nine Times that Inmate

---

[9]  The Court notes that Moore does not make any substantive allegations against MCCF itself in
the body of the Amended Complaint.  However, in an abundance of caution and construing
Moore's Amended Complaint liberally, the Court will address any potential claims against
MCCF to the extent Moore seeks to raise them.

Guidelines Handbook has been violated by its own issuers/facility staff against Plaintiff Jeremiah Moore.").

The Court understands Moore's Amended Complaint as seeking to raise § 1983 claims against Defendants based on alleged violations of the Guidelines.  "As many courts have held, corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures."  *Bowman v. Wetzel*, Civ. A. No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases); *see also Curry v. McCann*, Civ. A. No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, Civ. A. No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).  Accordingly, to the extent that Moore seeks to assert any § 1983 claims against Defendants based on alleged violations of MCCF's Inmate Guidelines, these claims will be dismissed.  As amendment of these claims would be futile, the dismissal of these claims will be with prejudice.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should be generally be granted "unless amendment would be inequitable or futile.")

### C.   Claims for Violations of the Universal Declaration of Human Rights

In the subsection of Moore's Amended Complaint entitled, "VI. Legal Claims", Moore cites approximately twenty separate Articles from the United Nations' Universal Declaration of Human Rights.[10]  (*See, e.g.*, ECF No. 9 ¶¶ 42-46) (referring to Articles 1, 3, 5-7, 9-12, 17-22, 25-

---

[10]  A PDF copy of the Universal Declaration of Human Rights is available at https://www.un.org/sites/un2.un.org/files/udhr.pdf (last visited Nov. 4, 2021).

29) (*see also id.* ¶ 42) ("Article 10 full equality to fair hearing in determination of obligations, Article 3 Security of Person, of the Declaration of Human Rights.").  The Court understands these citations as Moore's attempt to assert § 1983 claims based on Defendants' alleged violations of the Universal Declaration of Human Rights.

As the United States Court of Appeals for the Third Circuit has recognized, "the Universal Declaration of Human Rights is a non-binding declaration that provides no private rights of action."  *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (explaining that the Universal Declaration of Human Rights is merely a resolution of the United Nations and "does not of its own force impose obligations as a matter of international law").  District courts throughout this Circuit have routinely dismissed claims brought under the Universal Declaration of Human Rights with prejudice for failure to state a claim or as legally frivolous.  *See, e.g.*, *Best v. S.C.I. Huntingdon*, Civ. A. No. 19-01599, 2019 WL 5866707, at *5 (M.D. Pa. Oct. 9, 2019), *report and recommendation adopted*, 2019 WL 5868259 (M.D. Pa. Nov. 8, 2019) (recommending dismissal of claims under the Universal Declaration of Human Rights for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) in a prisoner civil rights action); *Hamilton v. Dolce*, Civ. A. No. 18-2615, 2019 WL 4509375, at *3 (D.N.J. Sept. 19, 2019) (dismissing with prejudice *pro se* prisoner's claims for violations of the Universal Declaration of Human Rights); *Pavalone v. Pres. Mgmt. Inc.*, Civ. A. No. 18-191, 2019 WL 1117931, at *3 (M.D. Pa. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1117919 (M.D. Pa. Mar. 11, 2019) (recommending dismissal of non-prisoners' claims for the "alleged violation[s] of their rights under the Universal Declaration of Human Rights . . . as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)).  Accordingly, to the extent Moore

raises claims against Defendants for violating the Universal Declaration of Human Rights, the claims are dismissed with prejudice as any amendment would be futile.

> **D.     Claims against Members of the MCCF Board of Inspectors and Administrators at MCCF**

Five of the Defendants Moore names in his Amended Complaint – Szekely, Wieman, Behr, Catania, and Turtle – are the President, Vice President, and remaining members of the Board of Inspectors for MCCF.  However, Moore makes no allegations that any of these five individuals had any personal involvement in the events of June and July of 2020 that resulted in a violation of his constitutional rights.  Rather, Moore only makes conclusory allegations against these Defendants, claiming that they are "legally responsible" for inspections of the facility, upholding and enforcing policies and procedures, the regulation of the staff, and ensuring the welfare of the inmates.  (*See generally* ECF No. 9 ¶¶ 4-8.)

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode*, 845 F.2d at 1207; *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Because Moore makes no allegations describing how these individual members of the Board of Inspectors are personally responsible for any alleged constitutional violations with respect to the events of June and July 2020, his claims against these individuals will be dismissed with prejudice for failure to state a claim as it appears any attempt to amend against these individuals would be futile.

Moore also names MCCF Deputy Warden Sean P. McGee, MCCF Assistant Warden Mark S. Murray,[11] and MCCF Corrections Officers Sergeant Baker and Captain Berger. However, much like the members of the Board of Inspectors, Moore makes no allegations that any of these individuals had personal involvement in the events of June and Jul 2020 that he claims resulted in a violation of his constitutional rights.  As a result, the claims against these individuals must also be dismissed with prejudice.  *See Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676.

### E.    Claims Regarding Grievance Policy

Moore also asserts that on numerous occasions he was denied "his right to redress of grievance[s]."  (ECF No. 9 ¶ 45.)  Specifically, he alleges that he "filed requests, submitting formal request forms" by "placing them in the request box designated on the block[,]" but he received no response to his grievances in violation of his constitutional rights.  (*Id.*)  Moore's constitutional claims based on the handling of his prison grievances are dismissed with prejudice because "[p]rison inmates do not have a constitutionally protected right to a grievance process."

---

[11]  The only allegation regarding Defendant Murray in the Amended Complaint is Moore's contention that he filed an appeal on June 24, 2020 from his disciplinary hearing which went to Defendant Murray.  (ECF No. 9 ¶ 31.)  This allegation alone is insufficient to demonstrate that Defendant Murry had personal involvement in the alleged constitutional violations Moore complains of here.  *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue].").

*Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).

### F.   Claims Regarding the June 17, 2020 Cell Inspection

With respect to the June 17, 2020 cell inspection, Moore alleges that he was "the victim of a search" and that it was a "violation of [his] privacy and effects[.]"  (ECF No. 9 ¶ 41.)  Moore specifically claims that Defendant Minerva violated his Fourth Amendment rights by searching his cell on June 17, 2020.  (*Id.*)  This claim is also dismissed with prejudice since it is well established that "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property"); *see also Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (the Fourth Amendment right to be free from unreasonable searches and seizures does not apply to an inmate's prison cell or personal property).

### G.   Claims Regarding the Misconduct Report and Disciplinary Action

After being served with the misconduct report stemming from Minerva's discovery of a plastic bag of liquid and cut up fruit in his cell, Moore alleges that he was the "victim of a seizure" and that his due process rights were violated, depriving him of his life, liberty, and property.  (*See* ECF No. 9 ¶¶ 25-26, 42.)  Moore contends that he was "detained without reason" and that a "sanction [was] imposed upon [him] without due process or a hearing" because he was "immediately taken to the RHU after being served with misconduct" in violation of the

Fourteenth Amendment.  (*Id.* ¶ 42.)  The Court understands Moore to be raising Fourteenth

Amendment due process claims against Defendants Minerva, Davis, and Patton.

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally,

prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as

long as it is not a punishment for the 'underlying crime of which he stands accused.'"[12] *Kanu v.

Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06

(7th Cir. 1999)).  However, while "'pretrial detainees do not have a liberty interest in being

confined in the general prison population, they do have a liberty interest in not being detained

indefinitely in [disciplinary segregation] without explanation or review of their confinement.'"

*Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (*per curiam*)

(quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)).  With respect to pretrial detainees,

"the imposition of disciplinary segregation for violation of prison rules and regulations cannot be

imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S.

539 . . . (1974)."  *Kanu*, 739 F. App'x at 116.  Such protections "include the right to receive

written notice of the charges at least 24 hours before the hearing, the opportunity to present

witnesses and documentary evidence, and a written statement of the reasons for the disciplinary

action taken and the supporting evidence."  *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also

Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

"[D]etention officials' restrictions on pretrial detainees will constitute punishment

prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish

---

[12]  Although the Amended Complaint does not specifically set forth his detention status at the
time, having reviewed the public record related to Moore's underlying criminal offenses, it
appears that Moore was a pretrial detainee at MCCF in June and July of 2020.  *See
Commonwealth v. Moore*, CP-46-CR-0006395-2019 (C.P. Montgomery).

on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., " if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that purpose." *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007)) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

Moore appears to allege that his due process rights were violated when he was sent to the RHU after the search of his cell revealed a plastic bag of liquid and cut up fruit which prison officials determined was contraband. Moore has failed to state a plausible due process claim because his Amended Complaint makes clear that he specifically received written notice of the charge against him on or about June 17, 2020 – well in advance of his June 24, 2020 disciplinary hearing. (*See* ECF No. 9 ¶¶ 23-27, 29-31.) Moreover, Moore's Amended Complaint fails to make any allegations regarding whether he had an opportunity to present witnesses and documentary evidence and the extent to which he received a written statement of the reasons for the disciplinary action taken and the supporting evidence. Without these supporting allegations, Moore's claim is subject to dismissal. However, because the Court cannot say at this time that

Moore can never assert a plausible Fourteenth Amendment claim based on the disciplinary action, the dismissal will be without prejudice and Moore will be granted leave to file a second amended complaint on this narrow due process claim against Minerva, Davis, and Patton regarding his hearing and the disciplinary action taken against him.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will dismiss Moore's Amended Complaint with prejudice except for his due process claims arising from the disciplinary hearing and the disciplinary action imposed in June of 2020.  These narrow claims are dismissed without prejudice to Moore filing a second amended complaint in the event he can cure the defects outlined above and state a plausible claim.  An appropriate Order follows.

**BY THE COURT:**


_____

**JUAN R. SÁNCHEZ, C.J.**