IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMIAH MOORE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-5172 |
| | : | |
| C. MINERVA, *et al.* | : | |

## MEMORANDUM

**Judge Juan R. Sánchez**                                                                                          **March 29, 2024**

Pro se Plaintiff Jeremiah Moore, formerly incarcerated as a pretrial detainee at Montgomery County Correctional Facility ("MCCF"), brings this action pursuant to 42 U.S.C. § 1983 against three MCCF employees, Defendants C. Minerva, Sgt. Baker, and Christopher Pettine. Moore claims the Defendants violated his Fourteenth Amendment due process rights during disciplinary proceedings for his possession of "hooch," a beverage made from water and fruit. Defendants move for summary judgment, arguing Moore received due process protections and did not exhaust the prison's administrative remedies. Defendants, however, did not prove Moore failed to exhaust his administrative remedies, and the motion for summary judgment will be granted in part and denied in part as follows. First, because the Court concludes there were legitimate managerial reasons to place Moore in segregation housing, the motion will be granted as to Moore's substantive due process claim. As to his procedural due process claims, because Moore received written notice of the charges against him a week before the disciplinary hearing, the motion will be granted on this single issue. The motion will be denied as to the other procedural due process protections required by law.

**BACKGROUND**

Moore was incarcerated as a pretrial detainee at Montgomery County Correctional Facility ("MCCF") from September 14, 2019 to November 17, 2020.  Aff. Martha D'Orazio ¶ 2, ECF No.

1

45-3. During the intake process, he received a copy of the Inmate Guidelines handbook, which outlined all of the MCCF's rules and regulations. *Id* ¶ 8; *see also* Intake Acknowledgment Form, ECF No. 45-9. On June 17, 2020, Defendant Minerva discovered a trash bag "filled with liquid and a large quantity of cut up fruit" in Moore's cell during a routine inspection. Misconduct Rep., June 17, 2020, ECF No. 45-7. The inmate population refers to this mixture of liquid and fruit as "hooch." *Id*. Hooch is not allowed in the MCCF because it is a fermented drink which has alcoholic effects and "creates a health and safety risk . . . because insects and/or other vermin could be attracted to the fermenting liquid." Aff. Martha D'Orazio ¶¶ 4, 6, ECF No. 45-3.

Minerva reported the discovery to his supervisor, Defendant Sgt. Baker. Incident Rep., ECF No. 45-5. Minerva and Baker questioned Moore about the hooch and then sent him to medical "to be cleared for pre-hearing segregation." *Id*. After a registered nurse cleared Moore, he was re-housed in segregation housing pending a hearing. *Id*. According to the Inmate Guidelines Handbook:

> An inmate who is accused of misconduct will remain in General Population until the hearing unless he/she has been charged with a violent offense against person or property, or he/she continues to violate the rules after being informed of the charge, or in the written opinion of the Supervisor the inmate must be segregated.

§ 37(C), ECF No. 45-11. Moore was placed in segregation housing pursuant to Baker's written opinion. *See* Special Mgmt. Unit Hous. Notification Form, ECF No. 45-10 ("Jeremiah was rehoused in pre-hearing segregation housing due to being found in possession of contraband in the form of 'hooch.'"). Both Minerva and Baker filled out documentation of the incident. *Id*.; *see also* Misconduct Rep., June 17, 2020, ECF No. 45-7; Incident Rep., ECF No. 45-5; IMG_0349.JPG, ECF No. 45-6 (photo of the hooch discovered in Moore's cell). Moore received copies of the re-

2

housing form and misconduct report. *See* Hous. Notif. Form, ECF No. 45-10;[1] Misconduct Rep., June 17, 2020, ECF No. 45-7.

The Inmate Guidelines handbook provides: "[a]ll inmates accused of misconducts have the right to a hearing before the Disciplinary Hearing Board before any punishment is imposed." Inmate Guidelines § 37(A), ECF No. 45-11. Inmates may waive this right and elect to have a hearing before one of three "Alternative Disciplinary Hearing Officers." *Id*. § 38. Moore requested a hearing before the full board. Rep. Disciplinary[2] Hr'g Bd., ECF No. 45-8. His hearing was therefore to be "held no less than one day nor more than four working days, excluding monthly inspection days, holidays, weekends and continuances, after the inmate has been informed, in writing, of the specific violation of which he/she is accused." *Id*. § 37(J). In practice, it usually takes a few days to schedule hearings because the disciplinary board must be comprised of three members of the MCCF's staff "who were not involved in the misconduct incident." Aff. Martha D'Orazio ¶ 9, ECF No. 45-3.

Moore's disciplinary board hearing occurred on Wednesday, June 24, 2020, one week after the misconduct. Rep. Disciplinary Hr'g Bd., ECF No. 45-8. Defendant Christopher Pettine was one of the three board members. *Id*. Moore testified on his own behalf that "[i]t was not contraband" and he made "water drinks with fruit in it." *Id*. He claims, however, he was not able to call witnesses or present evidence at the hearing. Sec. Am. Compl. 4, ECF No. 18. Defendants maintain witnesses were neither called nor denied, but the disciplinary board's report simply reads "NA" under the witness section. Defs.' Mot. Summ. J. 13, ECF No. 45; Rep. Disciplinary Hr'g

---

[1] Hereinafter, this document will be cited to in short form as "Hous. Notif. Form".

[2] "Disciplinary" is misspelled as "Diciplinary" on the MCCF form in the record. The Court notes the misspelling but uses the correct convention in citations throughout this memorandum.

3

Bd., ECF No. 45-8. The board found Moore guilty of the misconduct, assessed a $15 major misconduct fee, and sentenced him to twenty days of disciplinary segregation retroactive to June 17, 2020. Rep. Disciplinary Hr'g Bd., ECF No. 45-8.

The MCCF's policy after disciplinary hearings is to verbally inform inmates of (1) disciplinary decisions, (2) the termination date of discipline, and (3) the appeals process. Aff. Martha D'Orazio ¶ 11, ECF No. 45-3. Moore, however, never received a copy of the disciplinary board's final report. *See* Sec. Am. Compl. 4, ECF No. 18 (ECF pagination); *see also* Answer . . . Defs.' C. Minerva and Sgt. Baker ¶ 7, ECF No. 27; Answer . . . Def. Christopher Pettine ¶ 7, ECF No. 39 (Def. Pettine). And although the board explained the appeals process to Moore, it is unclear if he ever filed an appeal. Rep. Disciplinary Hr'g Bd., ECF No. 45-8. Although Defendants do not have a record of any appeal, Moore maintains he submitted an appeal slip[3] within five days. Aff. Martha D'Orazio ¶ 12, ECF No. 45-3; Opp'n Mot. Summ. J. 4, ECF No. 47 (ECF pagination). After he completed his term in segregation housing, Moore submitted a grievance slip inquiring about the status of his appeal, but never received any substantive response. Opp'n Mot. Summ. J. 11, ECF No. 47 (ECF pagination)

Moore initially filed this suit in October 2020. *See* Compl., ECF No. 2. He subsequently amended the complaint twice, and on February 11, 2022, he filed the operative complaint against Minerva, Baker, and a Defendant "Patton" under 42 U.S.C. § 1983 and the Fourteenth

---

[3] Specifically, Moore asserts he could not submit his appeal slip through the inmate request box because he was in segregation housing, but instead, handed the form to the correctional officer who submits requests and other forms on behalf of inmates in segregation housing. Opp'n Mot. Summ. J. 4-5, ECF No. 47. Moore further avers correctional officers are known for disposing of these request slips. *Id*.

Amendment.[4] *See* ECF No. 18. After all Defendants failed to timely respond, Moore moved for default judgment on January 10, 2023. *See* ECF No. 24. On January 24, 2023, Defendants Minerva and Baker responded and requested leave to file an answer, which the Court granted. *See* ECF Nos. 25-27. As to Defendant "Patton," on March 25, 2023 Moore moved to amend the complaint and caption to reflect the third defendant is Christopher Pettine. ECF No. 35. The Court granted this motion, ECF No. 36, and Pettine filed an answer on April 11, 2023. ECF No. 39. All three Defendants now move for summary judgment. ECF No. 45. Moore filed a response in opposition on May 30, 2023, and the motion is ripe for disposition.[5]

---

[4] Although the Second Amended Complaint also purports to assert claims under the Fifth, Sixth, and Eighth Amendments, these claims were previously dismissed with prejudice as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Order, Nov. 8, 2021, ECF No. 12. The Court thus considers the Fourteenth Amendment claim only.

[5] The Court initially scheduled oral argument on the motion for July 2023, but Moore failed to appear. Accordingly, the Court directed him to show cause why the case should not be dismissed. Order, July 26, 2023, ECF No. 49. Moore failed to respond to this order.

A district court has the inherent power to dismiss a case sua sponte for failure to prosecute. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) (holding Federal Rule of Civil Procedure 41(b) allows courts, "acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"). Before dismissing a case as a sanction for a party's litigation conduct, however, a district court must consider and balance the following factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). No single factor is dispositive, and "not all of the *Poulis* factors need be satisfied in order to dismiss a complaint." *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (citation omitted). In considering the *Poulis* factors, the Court concludes two weigh in favor of dismissal (Moore's personal responsibility and the unavailability of alternative sanctions), two factors are neutral (prejudice to the adversary and history of dilatoriness), one is unknown (willfulness or bad faith behavior), and

**STANDARD OF REVIEW**

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Only material facts which "might affect the outcome of the suit under the governing law" will preclude summary judgment. *Id.* at 248. When considering a motion for summary judgment, the court must "view all facts in the light most favorable to the non-moving party and draw all inferences in that party's favor." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). Additionally, the Court must construe pro se filings liberally and "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

**DISCUSSION**

Moore claims the Defendants violated his Fourteenth Amendment substantive due process rights by placing him in segregation housing for seven days prior to his disciplinary hearing and the imposition of his sentence. He also argues his procedural due process rights were violated because he did not have the opportunity to call witnesses, present evidence, or face his accusers. Moore further claims he did not receive a written explanation of the board's decision. The Defendants move for summary judgment, arguing the due process claim is foreclosed because Moore failed to exhaust administrative remedies, and because the disciplinary procedures satisfied due process. The Court concludes as follows. First, Defendants did not prove Moore failed to

---

one weighs against dismissal (the meritoriousness of Moore's claims). As such, the Court declines to dismiss and considers the motion for summary judgment on the merits.

exhaust his administrative remedies. Second, Moore's substantive due process claim is foreclosed because the MCCF had a legitimate reason to place him in segregation housing prior to the disciplinary hearing. Third, while the MCCF afforded Moore at least one of his procedural due process protections, written notice of the charges, it neglected to provide a written statement of the reasons for disciplinary action, and it is unclear whether Moore had the opportunity to call witnesses and present evidence. Therefore, the Defendants' motion for summary judgment will be granted in part and denied in part.

As a threshold matter, Defendants assert Moore's claims should be dismissed because he did not exhaust the prison's administrative remedies prior to bringing suit. The Prison Litigation Reform Act ("PLRA") prohibits an action "with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust is an affirmative defense the defendant must plead and prove." *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013). And though exhaustion is a question of law, "it necessarily involves a factual inquiry." *Id*. at 271. Defendants maintain they have no record of an appeal from Moore, even though the Inmate Guidelines handbook outlines the process and the disciplinary board verbally informed him of it. Aff. Martha D'Orazio ¶¶ 11-13, ECF No. 45-3; *see also* Inmate Guidelines §§ 25(6), 37(B)(9), ECF No. 45-11; Rep. Disciplinary Hr'g Bd., ECF No. 45-8.

A prisoner, however, need only exhaust those administrative remedies which are "actually available" to him. *Shumanis v. Lehigh Cnty.*, 675 F. App'x 145, 147 (3d Cir. 2017) (internal quotation marks and citation omitted).

> An administrative procedure is unavailable whenever: (1) 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

7

*Id*. at 148 (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)). Moore insists he handed an appeal slip to a corrections officer, and contends the officers are known for disposing of slips. Opp'n Mot. Summ. J. 4-5, ECF No. 47 (ECF pagination). Defendants did not respond to this contention. In the absence of further evidence, the Court concludes the Defendants have not proven this affirmative defense, and thus their summary judgment motion based on failure to exhaust is denied. The Court now turns to Moore's due process claims.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." In this context, "prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the underlying crime of which he stands accused." *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (internal quotation marks and citation omitted). Pretrial detainees, however, "have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement." *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (internal quotation marks and citation omitted).

> [D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) there is a showing of express intent to punish on the part of [those] [ ] officials; (2) the restriction or condition is not rationally related to a legitimate non-punitive government purpose, i.e., if it is arbitrary or purposeless; or (3) the restriction is excessive in light of that purpose.

*Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (internal quotation marks and citation omitted) (alterations in original). There is no indication in this case of an "express intent to punish" on the part of the MCCF's officials. *Id*. As to legitimate, non-punitive government purposes, "maintaining internal security and order in jails and prisons are legitimate governmental objectives," and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id*. at 505 (internal quotation marks and citations omitted). Accordingly, if officials can articulate

8

a legitimate purpose for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

Baker reassigned Moore from the general population to segregation housing prior to a disciplinary hearing because Moore had hooch.  Hous. Notif. Form, ECF No. 45-10. The Court finds support for Baker's decision in the Inmate Guidelines handbook, which lists "Adulteration of any Food or Drink" and "Making Fermented Beverages" as major misconduct violations. §§ 35(A)(17), (23), ECF No. 45-11. Moore's substantive due process claim is thus foreclosed because Baker had a "legitimate managerial concern" when he placed Moore in segregation housing. *Stevenson*, 495 F.3d at 69.

Still, disciplinary segregation "for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)." *Kanu*, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Id*. (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson,* 495 F.3d at 70. The Court will now analyze Moore's procedural due process claim, considering each protection required by *Wolff* in turn.

The first due process protection is the right to receive written notice of the charges at least 24 hours before the hearing. *Wolff*, 418 U.S. at 564. On June 17, 2020, Moore received and signed copies of the misconduct report and the rehousing form. Misconduct Rep., June 17, 2020, ECF

9

No. 45-7; Hous. Notif. Form, ECF No. 45-10. The misconduct report stated the violation and the action to be taken. Misconduct Rep., June 17, 2020, ECF No. 45-7. The rehousing form also stated why Moore was placed in segregation housing. Hous. Notif. Form, ECF No. 45-10. Moore thus received written notice of the charges one week before his disciplinary hearing, and summary judgment will be granted for Defendants on this issue.

The second due process right is the opportunity to present witnesses and documentary evidence, provided doing so "will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. As a starting point, it is unclear what witnesses Moore wanted to testify on his behalf, or what documentary evidence he sought to present.[6] It is also unclear why there were no additional witnesses at his disciplinary hearing, or what evidence the board used when it made its decision.[7] *See* Rep. Disciplinary Hr'g Bd., ECF No. 45-8. Hence, the Court cannot conclude at this stage of litigation whether Moore's right to present witnesses or documentary evidence was protected. Summary judgment will be denied on this point.

The third due process protection is the right to a written statement of the reasons for the disciplinary action taken and the evidence relied upon. *See Wolff*, 418 U.S. at 564; *see also Griffin v. Ebbert*, 640 F. App'x 181, 185 (3d Cir. 2016) ("We recognize that, pursuant to the Supreme Court's decisions in *Wolff* and *Hill*, Griffin was entitled to a 'written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action.'"). It is undisputed that Moore

---

[6] The Court infers from the pleadings and Moore's arguments at the Pretrial/Rule 16 Conference on May 1, 2023, that Moore thinks the MCCF should have provided evidence of fermentation in the hooch recovered from his cell. It is unclear, however, that this type of "evidence" is part of the *documentary* evidence right afforded by *Wolff*. Moreover, even if the liquid had not yet fermented, it still constituted contraband under the MCCF's rules and regulations. *See* Aff. Martha D'Orazio ¶ 5, ECF No. 45-3.

[7] As to witnesses, the report simply reads "NA" under the relevant section. There is no reference to any evidence.

10

never received this written statement. *See* Answer . . . Defs.' C. Minerva and Sgt. Baker ¶ 7, ECF No. 27 ("Plaintiff was not given a written copy of the decision of the disciplinary board but instead was informed of the decision orally at the conclusion of the hearing."); *see also* Answer . . . Def. C. Pettine ¶ 7, ECF No. 39 (". . . Plaintiff was not given a copy of the written decision of the disciplinary hearing board, but instead was informed of the decision orally at the conclusion of the hearing."). Accordingly, Defendants are not entitled to the entry of summary judgment in their favor on this ground.

**CONCLUSION**

In sum, Defendants failed to prove their affirmative defense of procedural default under the PLRA. As to Moore's substantive due process claim, Defendant Baker had a legitimate managerial reason to place Moore in pre-hearing segregation housing, so the Court will grant Defendants' motion for summary judgment on this issue. But the evidence before the Court on Moore's procedural due process claim compels a mixed conclusion. Moore received written notice of the charges against him a week before the disciplinary hearing, but never received a written statement of the reasons for the disciplinary action. And it is unclear whether he had an opportunity to call witnesses and present documentary evidence. The Court thus will grant summary judgment for Defendants on the procedural due process claim as to the written notice protection only, and deny summary judgment as to all other procedural due process protections.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.